IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GALE A. RACHUY and
SANDRA K. RACHUY,

                                                         OPINION AND ORDER

                   Plaintiffs,

                                                     09-cv-356-slc[1]

        v.

TOM McCARNEY,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This civil case was filed in June 2009 by plaintiffs Gale A. Rachuy and Sandra K. Rachuy.  Initially, the case was dismissed for lack of subject matter jurisdiction.  Dkt. #6. After judgment was entered, plaintiffs filed affidavits curing the jurisdictional problems and moved to reopen their case.  Dkt. #12.  Because plaintiffs seek leave to proceed without prepayment of fees and costs and, when the complaint was filed, plaintiff Gale Rachuy was an inmate at the Faribault Correctional Facility in Faribault, Minnesota, under the 1996 Prison Litigation Reform Act Gale A. Rachuy was required to make an initial partial payment

---

[1] While this court has a judicial vacancy, it is assigning 50% of its caseload automatically to Magistrate Judge Stephen Crocker.  Therefore, for the purpose of issuing this order only, I am assuming jurisdiction over the case.

of $7.50, which plaintiffs have now done.  However, plaintiffs' request for leave to proceed

in forma pauperis requires a screening of their complaint.  28 U.S.C. § 1915(e)(2)(B).

Because plaintiffs are proceeding pro se, the court must read the allegations of the

complaint generously.  Haines v. Kerner, 404 U.S. 519, 521 (1972).  Nonetheless, their

complaint must be dismissed if it is legally frivolous, malicious, fails to state a claim upon

which relief may be granted or asks for money damages from a defendant who by law cannot

be sued for money damages.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  I conclude that plaintiffs'

complaint fails to state a claim a claim upon which relief may be granted.

The following facts are drawn from plaintiff's complaint.


ALLEGATIONS OF FACT

A.  Parties

Plaintiffs Gale and Sandra Rachuy are citizens of Minnesota.  Defendant Tom

McCarney is a citizen of Wisconsin.


B.  Plaintiffs' Relationship with Defendant

On August 22, 2005, plaintiff Gale Rachuy entered into an agreement with defendant

Tom McCarney to lease a home and property at 4646 West Pioneer Road in Duluth,

Minnesota.  On November 18, 2005, plaintiff Gale wrote defendant two post-dated checks:

2

one for $7000 and one for $3000.  Gale sent the checks and a letter to defendant explaining that defendant should deposit the $7000 check on November 24 and that the $3000 check was for plaintiffs' December lease payment.  Defendant received the checks and letter on November 21, 2005.  On November 28, 2005, $22,500 was deposited into plaintiffs' checking account.

Sometime in November 2005, defendant began an unlawful detainer action against plaintiffs in the St. Louis County courts.  On December 1, 2005, the St. Louis County sheriff taped a notice to the door of the residence at 4646 West Pioneer Road informing plaintiffs that a hearing on the unlawful detainer action would take place on December 2, 2005.  The hearing was rescheduled once for December 8 and again for December 12, 2005.

On December 12, 2005, a hearing on the unlawful detainer action was held before Judge Gerald Martin.  Plaintiffs did not appear for the hearing.  Defendant lied to Judge Martin by explaining that he had not received plaintiffs' October lease payment.  Defendant was granted a writ of restitution.

That same day, the sheriff posted a copy of the writ on the door of the 4646 West Pioneer Road residence giving plaintiffs notice that they had twenty-four hours to leave the residence with their belongings.  After the sheriff left, defendant entered the residence, turned on the furnace, took a chainsaw belonging to plaintiffs and then left the residence. Although plaintiffs were being forced to move in the largest snowstorm of the year,

3

defendant told the snow-plow service not to plow the driveway at the residence.  Later on
December 12, 2005, defendant spoke with plaintiff Sandra Rachuy and told her she could
leave property in the house or on the property until the spring because he did not plan to
do anything with the property until May 2006.

On December 13, 2005, plaintiff Sandra called defendant and told him that she tried
to move out as many of her belongings as she could but she was forced to leave many items,
including five cords of firewood and a John Deere riding lawnmower.  The value of the items
left totaled $12,865.  Defendant did not have the sheriff inventory the items left at the
residence.

In June 2006, plaintiff Gale Rachuy called defendant to ask when he could pick up
the personal property left at the residence.  Defendant told him to call back in a week.
When he did so, defendant told him that he had burned the firewood that had been left and
that there was nothing of value remaining at the residence.  Defendant refused to allow
plaintiffs access to the residence to retrieve their personal property.  Gale Rachuy wrote
defendant, demanding the return of his property that had been left at the residence, and
began an action in conciliation court when defendant continued to refuse to return plaintiffs'
property.

On October 13, 2006, defendant deposited the checks plaintiffs had sent him the year
before, in November 2005.  The checks were more than eleven months old and thus void.

Also, plaintiffs had closed the checking account from which the checks were written.  On October 16, 2006, Anchor Bank returned the checks to defendant's bank, Wells Fargo, because the account was closed.

On October 20, 2006, defendant spoke with a Duluth police officer to report that he had received bad checks from plaintiff Gale Rachuy.  Defendant told the officer that he wanted to pursue charges against Gale for the bad checks.  Defendant did not tell the officer that he had waited more than eleven months before attempting to deposit the checks.

On October 27, 2006, Judge David Johnson held a trial in plaintiff Gale Rachuy's conciliation court action.  Defendant provided the court a copy of the checks Gale had written him, but said that he could not remember when he had deposited the checks. Although Gale had initiated the conciliation court action to obtain the property left at the residence, the court issued a $7500 judgment in favor of defendant.  In November 2006, plaintiff Gale appealed the $7500 judgment.  On November 17, 2006, plaintiff Gale wrote defendant, demanding the return of his property listed in an attachment to the letter.  On October 11, 2007, an additional conciliation court action commenced by plaintiffs was dismissed without prejudice.

On October 30, 2006, Jeanine Pauly, a Duluth police officer, was assigned to investigate the dishonored checks plaintiff Gale Rachuy had given to defendant.  On November 14, 2006, Pauly interviewed defendant.  Defendant lied to Pauly, telling her that

5

he had served plaintiff Gale with a demand for payment notice.  That same day, Pauly faxed Anchor Bank to obtain financial documents concerning Gale's checks.  On November 15, 2006, Anchor Bank faxed financial information to Pauly.

On January 10, 2007, the St. Louis County Attorney's Office charged plaintiff Gale Rachuy with two counts of issuing a dishonored check.  On March 7, 2007, the county attorney's office amended the complaint to add two counts of theft by swindle.  That same day, Gale was arrested.  He was released upon posting a $40,000 bond.  On May 15, 2007, Anchor Bank faxed plaintiffs copies of the checks defendant had attempted to deposit.  The checks were stamped received and returned on October 16, 2006.  Plaintiffs hired an attorney and spent $75,000 on the attorney's services.  On December 5, 2007, plaintiff Gale, acting pro se at the time, moved to dismiss the dishonored check charges.  He argued that the checks were "stale-dated" when defendant attempted to presented them to the payor bank.  On December 14, 2007, the St. Louis County Attorney's Office dismissed the charges in reliance on the dishonored checks.

DISCUSSION

Plaintiffs set out eleven claims against defendant, but they cannot proceed on their first five claims or their conversion claim because there is a lack of subject matter jurisdiction over those claims under the <u>Rooker-Feldman</u> doctrine.  This doctrine prohibits federal courts

other than the Supreme Court from exercising subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); see also Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings").  In applying the Rooker-Feldman doctrine, the inquiry is whether the "federal plaintiff seeks to set aside a state court judgment or whether he [or she] is, in fact, presenting an independent claim."  Taylor v. Federal National Mortgage Ass'n, 374 F.3d 529, 552 (7th Cir. 2004). Suits in which the plaintiffs seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry.  Id.

In this case, most of plaintiffs' allegations relate to injuries that they suffered as a result of adverse rulings made by the state court before plaintiffs filed the present action. Plaintiffs contend that defendant committed fraud upon the state courts by either committing perjury or admitting false evidence during the state court proceedings.  Rooker-Feldman requires plaintiffs to seek relief through the state courts if they want those state court judgments vacated.

Further, plaintiffs' allegations regarding defendant's alleged theft, attempted theft of

7

and conversion of their property relate to the property involved in the state conciliation court proceedings. According to plaintiffs' allegations, judgment was entered against them in those proceedings. Plaintiffs' allegations appear to be nothing more than an attempt to relitigate the merits of the underlying state court actions. Absent the writ of restitution or the judgment defendant obtained in the conciliation court action, plaintiffs would not have been evicted or have lost their personal property. E.g., Kelley v. Med-1 Solutions, LLC, 548 F.3d 600, 605 (7th Cir. 2008) ("Rooker-Feldman barred Long's due process claims because, absent the eviction order, Long would not have suffered the loss of property for which she sought compensation"). Thus, plaintiffs' first five claims and conversion claim fall squarely within Rooker-Feldman and are claims that should have been raised during the state court proceedings or on direct appeal.

Plaintiffs assert additional claims for false arrest and imprisonment, malicious prosecution and violation of their right to privacy. These claims implicate violations of plaintiffs' constitutional rights. Because the Constitution is not self-enforcing, these claim may be brought only under 42 U.S.C. § 1983, which creates a cause of action for damages against any person who violates another's federally protected rights while acting "under color of law." "A private individual has acted under color of law if there was a concerted effort between the individual and a state actor." Hanania v. Loren-Maltese, 212 F.3d 353, 356 (7th Cir. 2000). Plaintiffs have not alleged and it would not be reasonable to infer that there

8

was a concerted effort between defendant, who is a private individual, and any state actors to deprive plaintiffs of their constitutional rights.  In fact, plaintiffs' claims are premised on the allegations that defendant's fraudulent and false information led to an invasion of plaintiff's privacy followed by his arrest, prosecution and imprisonment.  In other words, according to plaintiffs, the state actors were not aware that defendant was lying to them. Therefore, plaintiffs cannot pursue their constitutional claims against defendant because they have not shown that he was acting under color of law.

Plaintiffs do not mention a state law cause of action for intentional infliction of emotional distress.  Nonetheless, because they are pro se litigants, I must read their complaint liberally.  A liberal reading could suggest the possibility of such a claim.  However, even assuming that plaintiffs might want to pursue such a claim, their allegations regarding defendant's false and fraudulent statements would not "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).

Under Minnesota law, an element of an intentional infliction of emotional distress claim is that the conduct was "extreme and outrageous."  Langeslag v. KYMN, Inc., 664 N.W.2d 860, 864 (Minn. 2003) (citation omitted).  This element prevents claims for mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Id. at 865 (quotation omitted).  In Langeslag, the Minnesota Supreme Court found that two false

reports filed with the police were not the kind of extreme and outrageous conduct necessary to evidence intentional infliction of emotional distress.  Id.  In fact, the Minnesota Supreme Court held that two false police reports along with repeated threats of legal action and loud arguments in the workplace did not constitute the type of extreme and outrageous conduct utterly intolerable in a civilized society, as required to be successful on an intentional infliction of emotional distress claim.  Id. at 865-66.

Plaintiffs allege that defendant made one false report to the police about plaintiff Gale's dishonored checks.  Although Gale was arrested for issuing dishonored checks, the charges were eventually dropped once Gale demonstrated that the checks had been stale when defendant tried to deposit them.  Further, those charges were not the only charges that served as a basis for Gale's arrest.  In fact, Gale was not arrested until charges in addition to the dishonored checks charges were issued against him.  Defendant's false statements are not the extreme and outrageous conduct necessary for an intentional infliction of emotional distress claim and plaintiffs fail to state such a claim.


ORDER

IT IS ORDERED that

1.  Plaintiffs Gale A. Rachuy's and Sandra K. Rachuy's complaint is DISMISSED for failure to state a claim upon which relief may be granted;

10

2.  The clerk of court is directed to close this case.

Entered this 6th day of January, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

11